UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DARREL A. DONTAY** | **CIVIL ACTION** |
| **VERSUS** | **NO:  06-2612** |
| **MICHAEL J. ASTRUE**<br>**COMMISSIONER OF SOCIAL SECURITY** | **SECTION: "A" (4)** |

## REPORT AND RECOMMENDATION

### I.    Introduction

This action seeks judicial review of a final decision of the Commissioner of Social Security pursuant to Title 42 of the United States Code § 405(g).  The Commissioner denied Darrel A Dontay's request for Disability Insurance Benefits ("DIB") under Title XVI of the Social Security Act, Title 42 U.S.C. § 1382c.  The matter was referred to the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(b) and Local Rule 19.02E(b), for the submission of Proposed Findings and Recommendations.

### II.   Factual and Procedural Summary

The plaintiff, Darrel A. Dontay, filed an application for DIB under Title XVI of the Social Security Act alleging that he was disabled from degenerative disc disease at the L5-S1, T1-L1 levels, and lateral stenosis bilaterally at the L4/L5 level.  (Tr.  18-19 ).  He contends that his disability began on June 15, 2000.  (Tr.  43-45).  He received an unfavorable decision at the administrative

level and requested a review by the Appeals Council. (Tr. 7). The Appeals Council denied his request on April 28, 2006, (Tr. 3-6), and he now seeks review before this Court. (Rec. Doc.1).

On appeal, Dontay contends that the ALJ's opinion is not based upon substantial evidence because: (1) the ALJ erred by failing to fully develop the record because he did not follow the recommendation of the Social Security Consulting Physician, Dr. Christopher Cenac, who suggested that an EMG be conducted along with an evaluation by a physical therapist to confirm the validity of his symptoms; and (2) the ALJ erred by failing to call the Vocational Expert because he had an obligation to determine if there were adequate jobs existing in reasonable number in the region and nation and could not rely upon the medical vocational guidelines. Dontay contends that the matter should be remanded for supplementation of the record with the necessary tests and vocational opinion.

The Commissioner contends that the ALJ properly determined that Dontay had the residual functional capacity to do light work. He also contends that the use of the medical vocational guidelines was proper such that the ALJ's opinion that there was sufficient number of jobs in the community is based upon substantial evidence. Having set forth the position of the parties, the Court will proceed with its consideration of the issues.

### III.   Standard of Review

The role of this Court on judicial review under Title 42 U.S.C. § 405(g) is limited to determining whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner applied the proper legal standards when evaluating the evidence. *See Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). The Court may not re-weigh the evidence, try issues *de novo,* or substitute its judgment for that of the Secretary. *Allen v. Schweiker*, 642 F.2d 799, 800 (5th Cir.

1981). If supported by substantial evidence, the Secretary's findings are conclusive and must be affirmed. *Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989).

"Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance." *Ripley v. Chater,* 67 F.3d 552, 555 (5th Cir. 1995). It must do more than create a suspicion of the existence of the fact to be established, but no "substantial evidence" will be found only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973).

A single piece of evidence will not satisfy the substantiality test if the ALJ ignores, or fails to resolve, a conflict created by countervailing evidence. Evidence is not substantial if it is overwhelmed by other evidence, particularly evidence offered by treating physicians. *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983).

Finally, the Court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnosis and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) [the claimant's] age, education, and work history." *Hendricks v. Apfel*, CIV.A.99-1212, 2000 WL 174884, at *3 (E.D. La. Feb. 14, 2000) (citing *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995)).

In determining whether a claimant is capable of engaging in any substantial gainful activity, the Commissioner applies a five-step sequential evaluation process. The rules governing the steps of this evaluation process are: (1) a claimant who is working and engaging in a substantial gainful activity will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless he has a "severe impairment"; (3) a claimant whose impairment

meets or is equivalent to an impairment listed in Appendix 1 of the regulations will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that he has done in the past must be found "not disabled"; and (5) if the claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do other work. *See Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). The burden of proof is on the claimant for the first four steps, but shifts to the Commissioner at step five. *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989).

**IV.    Analysis**

    **A.    Failure to Develop the Record**

Dontay contends that the ALJ erred when he failed to secure a physical therapy consultation and an electromyogram/nerve conduction study as suggested by the consultive examiner, Dr. Christopher Cenac. The Commissioner contends that the ALJ's decision is based upon substantial evidence because: (1) he relied upon the existing medicals and consulting opinion; and (2) Dontay has not provided proof that the failure to secure the supplemental medical information is prejudicial to his claim.

According to the record, the ALJ considered the opinion of Dr. Cenac. Dr. Cenac indicated that Dontay's reflexes were normal in both lower extremities with no atrophy, and neurologically normal but mechanically abnormal. (Tr. 19). Dr. Cenac noted that Dontay had normal gait and could perform work at the light exertional level or sedentary exertional level. *Id*.

The record shows that Dontay complained of low back and referred pain into the right leg with tingling and numbness all the way to the foot. (Tr. 71). He complained of difficulty with

sitting and with consistent symptoms. *Id*. Upon examination a straight leg raise test was conducted and Dr. Cenac observed tight hamstrings bilaterally. *Id*. His reflexes were normal with no sensory deficits to pin prick. *Id*. The long toe extensor function was equal and symmetrical and 5/5. *Id*. Dr. Cenac confirmed limitation of motion and the presence of muscle spasms. *Id*. He noted that he could heel and toe walk but with low back discomfort. *Id*.

Dr. Cenac further noted that Dontay had extensive multi-level degenerative pathology at all levels from L1 to the sacrum. *Id*. He noted significant loss of disc space height at the L5-S1. *Id*. He confirmed that the x-ray findings and MRI report findings were consistent. *Id*. Dr. Cenac also noted that Dontay has evidence of degenerative pathology and spinal instability with a history of radiculapathy. *Id*.

He therefore recommended an EMG before a definitive diagnosis and treatment recommendation could be made. (Tr. 71-72). He further suggested that a physical therapist should be consulted to assess him for malingering. (Tr. 72). Dr. Cenac concluded that, based upon his preliminary examination, he was of the opinion that Dontay was employable at a sedentary or light level of physical activity with lifting restrictions of 20 pounds. *Id*.

A musculoskeletal impairment (such as degenerative disc disease)[1] is severe enough to prevent a person from doing any gainful activity or employment if it results in compromise of a nerve root (including the cauda equina) or the spinal cord and is accompanied by limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine). 20 C.F.R. 404 Subpt. P. App. 1 §1.04 (A). *Id.*

---

[1] Under the listing of impairments, this includes herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, and vertebral fracture. *See* 20 C.F.R. 404 Subpt. P. App. 1 §1.04.

Dr. Cenac confirmed limitation of motion of the spine. (Tr. 71).  There was no atrophy but muscle spasm were present. *Id.*  Dontay's reflexes were normal in both extremities. *Id.*  However, Dr. Cenac was not in a position to confirm the cause of Dontay's muscle weakness and therefore recommended an electromyogram test to render a final opinion. *Id.*  He found that the straight leg raising examination confirmed tight hamstrings bilaterally. *Id.*  He rendered no opinion whether the  test was positive both in the sitting and supine position. *Id.*  The only indication is that there was some positive finding. *Id.*

An EMG is a test that is performed when patients have unexplained muscle weakness and helps to distinguish between muscle conditions in which the problem is in the muscle and muscle weakness due to nerve disorders.[2]  It can also be used to detect true weakness as opposed to weakness from reduced use because of pain or lack of motivation.[3]

The record shows that Dr. Jeffery Fitter diagnosed Dontay with spinal stenosis on August 23, 1999.[4]   (Tr. 97).  On July 11, 2002, this diagnosis along with mild lumbar spondylosis was confirmed by Dr. Akkaraju. (Tr. 135).  While Dontay has a condition of the spine that causes nerve compression and other symptoms required by §1.04, Dr. Cenac found an absence of sensory and reflex deficit both which are required in order for the degenerative condition to be considered disabling.  Therefore, the  failure to develop the record with the EMG test  and physical therapy evaluation does not render the opinion lacking in substantial evidence because it would not have provided proof of a sensory deficit or reflex loss, the remaining factors needed to establish disability

---

[2]*See* Frederick Hecht, MD, FAAP, FACMG, *Electromyogram*, Medicine.net, at http://www.medicinenet.com/electromyogram/article.htm

[3]*Id.*

[4]Spinal stenosis is a narrowing of the spinal canal that causes nerve compression resulting in  numbness, weakness, or pain. *See Spinal Stenosis*, at http://www.espine.com/stenosis.htm.

under §1.04 of the regulations.

### B. Residual Capacity Finding Not based upon Substantial Evidence.

Dontay also contends that the ALJ's decision is not based upon substantial evidence because he inappropriately used the medical vocational grid rather than secure the testimony of the vocational expert who was present during the administrative hearing. The Commissioner contends that the ALJ properly used the medical vocational grid to determine that a significant number of jobs existed in the national economy that Dontay could perform.

The Commissioner can meet his burden at step five of the sequential evaluation process by referring to the medical vocational "grid," 20 C.F.R. pt. 404, subpt, appt. 2, which dictates a finding of "disabled" or "not disabled" based on the claimant's exertional restrictions, age, education, and prior work experience. *Allison v. Apfel*, 229 F.3d 1150, 2000 WL 1276950 at * 3 (6th Cir. August 30, 2000) (table, text in Westlaw). The grids set forth presumptions regarding whether jobs exist in significant numbers in the national economy given the particular limitations possessed by the claimant. *Trimiar v. Sullivan*, 966 F.2d 1326, 1332 (10th Cir.1992).

However, "if the claimant has both exertional and nonexertional impairments, the ALJ is not permitted to rely on the grid alone to determine whether a disability exists." *Allison,* 2000 WL 1276950 at * 3; *see also* 20 C.F.R. pt. 404,subpt. P, app.2, § 200.00 (e). Indeed, there are two instances where it is legally appropriate to rely absolutely upon the grids. First, where the claimant's characteristics precisely match the criteria of the grid implemented; and second, where there are no significant nonexertional impairments present that reduce the potential occupational base of the grids. *Trimiar*, 966 F.2d at 1332..

When "a claimant's nonexertional limitations prevent the claimant from doing the full range of work at the designated level, then the ALJ must come forward with some reliable evidence showing

that there remains a significant number of jobs that the claimant can perform, taking into account the claimant's exertional[5] and nonexertional limitations." *Id.* (citing *Shelman v. Heckler*, 821 F. 2d 316, 321-322 (6th Cir. 1987)). In so doing, the "ALJ may rely on the assistance of a vocational expert to make this determination." *Id.*

Non-exertional limitations are those limitations such as pain that affect the claimants ability to meet the demands of the jobs other than the strength demands. *See* 20 C.F.R. § 416. 969a(c). The regulations list examples of non-exertional limitations as nervous, anxious or depressed, difficulty maintaining attention, concentrating or remembering, seeing or hearing, dust or fumes or handling, stooping, climbing, crawling, or crouching. *See* 20 C.F.R. 416.969a(c)(1)(i)-(vi).

In this case, the ALJ relied exclusively upon the medical vocational grid in reaching the decision that Dontay was not disabled. (Tr. at 21). The ALJ concluded that based upon Dontay's residual functional capacity of light work he could do the full range of light work and was not disabled pursuant to Medical-Vocational Rule 202.21. According to section 202, a full range of light work includes the functional capacity to perform sedentary as well as light work. 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 202.00. There are approximately 1600 separate sedentary and light unskilled occupations that can be identified in eight broad categories with each occupation representing numerous jobs in the national economy. *Id.*

In addition to the exertional limitations caused by Dontay's severe impairments of facet arthropathy; degenerative disc disease and retrolisthesis, the record shows that Dontay also had a nonexertional limitation of pain.

---

[5] 20 C.F.R. § 416.969(a) defines an exertional limitation as limitations and restrictions such as pain that affect only the claimants ability to meet the strength demands of jobs (sitting, standing, walking, lifting, carrying, pushing and pulling), they will be considered exertional.

However, the ALJ's opinion is devoid of any consideration of whether Dontay's nonexertional limitation of pain significantly limits the range of work permitted by his exertional limitation. In a conclusory fashion, the ALJ indicates that he considered the claimant's age, education and work experience and concludes that Dontay was not disabled as directed by Medical-Vocational Rule 202.21. The ALJ further found that if Dontay had solely nonexertional limitations that section 204.00 of the Medical-Vocational guidelines provide a framework for decision making.

In order to determine that the ALJ's reliance on the grids was incorrect, it is necessary to find that nonexertional limitations were present and that they were adequately significant to reduce the potential occupational base available under the grids. The Activities of Daily Living Form indicates that Dontay, as a result of his limitations, mostly lay down, watch the news, read a little and sometimes go to his parents home which is 20 minutes away. (Tr. 55).

Dontay further indicates that he is frequently awakened as a result of pain, he shaves as seldom as possible and remains in his pajamas as it "hurts" too much. (Tr. 56). He complains that he gave up on cooking because it irritates his back when he stands too much and causes an increase in pain. (Tr. 57). He further complains that every single day, he suffers from chronic back and leg pain and that by moving and doing things, his pain increases. *Id*.

Dr. Cenac, the consultative physician concluded that Dontay could not engage in repetitive stooping, squatting, twisting, kneeling, bending or climbing. (Tr. 71-72). He also found that he should not work at unprotected heights or walk on un-level surfaces. *Id.* Dr. Halzlieu conducted the residual functional capacity assessment which conflicts with Dr. Cenac's opinion to a degree as it provides that Dontay could occasionally engage in climbing, balancing, stooping, kneeling, crouching and crawling. (Tr. 76-83). It further provides that Dontay could stand and/or walk and sit for about 6 hours out of an 8 hour work day. (Tr. 77)

The ALJ noted that Dontay testified that his pain level varies but it can reach an eight on a ten point scale and is helped by medication. He complained however that the medication only lasts for up to two hours. (Tr. 20). The ALJ acknowledged that Dontay experienced pain but noted that his pain was lessened with the use of medication and therefore did not find Dontay totally credible regarding his degree of pain although he was diagnosed with degenerative pathology and spinal instability. (Tr. 20). There is no evidence that the ALJ gave any consideration to Dr. Cenac's finding of nonexertional limitations regarding stooping, climbing, crawling or crouching.

The records show that according to Dontay, his pain increases with activity and consideration should be given to how his pain, which is temporarily lessened due to medication, would reduce the number of available jobs that he could do in the economy. Therefore the medical vocational guidelines do not accurately and completely describe Dontay's limitations. Furthermore, in order to establish whether Dontay was disabled, the ALJ must hear testimony from a vocational expert.

## V.     Recommendation

The Court therefore finds that the ALJ's decision is not based upon substantial evidence and should be **REVERSED AND REMANDED.**

**On remand, the ALJ must reassess, after suitable proceedings, the severity of claimant's symptoms including his pain, taking into account the entire record and obtaining any expert medical opinion needed to illuminate the medical records. Further before simply applying the grid, the ALJ must consider the extent to which Dontay's exertional or non-exertional impairments may compromise his ability to perform light to sedentary work and utilize appropriate vocational resources.**

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within ten (10) days** after being

served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this  3rd   day of August 2007

_____
**KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE**